**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| John T. Hines | ] | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CASE NO: 1:08-cv-00914-PLF |
| | ) | |
| UNITED SATES OF AMERICA | ) | |
| | ) | |
| Defendant | ) | |

**REPLY TO THE UNITED STATES' OPPOSITION TO PLAINTIFF'S
MOTION FOR A PRELIMINARY INJUNCTION**

1.  On August 8, the United States filed an Opposition to Plaintiff's Motion for a Preliminary Injunction. Defendant claimed that the motion should be denied "because it is barred by the Anti-Injunction Act, leaving the Court without jurisdiction to grant the relief requested." Defendant is improperly applying the Anti-Injunction Act. This Court has jurisdiction and must grant Plaintiff's motion for preliminary injunction.

**I.      Plaintiff never received the required CDPH notices**

2.  According to 26 U.S.C. § 6330, no levy may be made on property or right to property of any person unless the secretary has notified such person in writing of the Secretary intention to make such a levy. Further no levy is allowed if CDPH is requested within 30

days and all appeals are exhausted. When a Plaintiff requests a hearing, all levies shall be suspended.

3.  Congress mandates for the IRS to send out notices before a levy can take place. This case is largely dependent on whether Plaintiff received these notices. If it is proven that the IRS failed to send the notices, as required by law, then the levy against Plaintiff is unauthorized.

4.  In his declaration, IRS Revenue Officer Mr. Daniel Haber stated that Plaintiff was sent notices of intent to levy and right to a due process hearing dated August 23, 2004, December 26, 2005, and February 20, 2006.

5.  Officer Haber did not list the names of officers who sent out these notices. He did not attach copies of these 2004, 2005, and 2006 notices of intent to levy and right to a due process hearing when he submitted his declaration. He did not attach a copy of the computerized transcript where it shows that these notices were sent out.

6.  The dates offered by Mr. Haber (August 23, 2004, December 26, 2005, and February 20, 2006) appear to be inaccurate because they do not correspond with IRS procedure which normally sends out a CDPH notice at least two years after the date of return is due.

7.  The tax years in question end in 2003. The time to file a 2003 return is April 15, 2004 and with extensions can be filed in August of that year. Based on the normal process that the IRS is required to complete (auditing, ninety-day letter, etc), the earliest that a CDPH notice could have been sent would be in mid 2006.

8.  In addition, a CDPH Notice (which is mandatory under Section 6330) generally comes out two months earlier than the levy notice. The Notice of Levy dated March 19, 2007 (and a copy of which was submitted to the Court by Defendant) should have been preceded by a CDPH notice around January 2007. That CDPH notice, as well, was never received by Plaintiff.

9.  Plaintiff has only received the notice of levy dated March 2007, and nothing else. The necessary notices for a CDPH hearing required under section 6330 were never received by Plaintiff.

10. Plaintiff mailed about eighty letters and administrative claims to various IRS offices (as shown in the Exhibits attached to the Complaint). Some of the letters were clearly marked or titled "LACK OF CDPH." Plaintiff never received a denial or rebuttal from any of the IRS offices he sent the letters to. Now that Plaintiff has filed a lawsuit, suddenly the IRS is claiming that these notices were sent out. If they were, the IRS would have rebutted Plaintiff's many letters long time ago. However, the IRS never did.

11. IRS Officer Haber is making claims that cannot be proven by the available evidence. His declaration is inaccurate. To state that notices were sent out is not sufficient as a proof that the notices were actually sent out or even received. The IRS never offered a proof that they were, and Plaintiff never received them.

12. If a CDPH notice was actually given, Plaintiff would have taken advantage of it because Plaintiff knows that by submitting for a CDPH, all collection activities and levies must come to an end. Certainly, Plaintiff would not ignore an opportunity that would benefit him in his desperate situation.

13. Plaintiff is highly aware of the importance of these notices and would have never ignored three of them. Plaintiff was never offered an opportunity for a CDPH, and, therefore, the levy against Plaintiff is unauthorized. Being so, this Court must end it and grant Plaintiff the injunctive relief he seeks.

## II. Defendant's Anti-Injunction argument is not applicable to this case

14. Section 7421(a) states the following: "Except as provided in sections §§ 6015(e), 6212(a) and (c), 6213(a), 6225(b), 6246(b), 6330(e)(1), 6331(i), 6672(c), 6694(c), and 7426(a) and (b)(1), 7429(b), and 7436, no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any

court by any person, whether or not such person is the person against whom such tax was assessed."

15.  Defendant claims that the Anti-Injunction Act (AIA) does not include a statutory exception for proceedings under Section 7433. Defendant then concludes that Plaintiff's relief is barred by the AIA.

16.  Defendant's analysis is faulty for a simple reason: Section 7433 was passed by Congress after the Anti-Injunction Act. It would be illogical to expect Section 7433 to be cited in Section 7421 which preceded it. Section 7433 trumps the Anti-Injunction Act.

17.  Even if Defendant wants to rely on Section 7421, it should be noted that when Congress wrote that provision, Congress certainly intended that "collection" be legal collection. For example, IRS agents could not physically torture a taxpayer to collect taxes. If that had taken place, the Department of Justice cannot argue that an injunction to bring an end to the physical torture would be restraining the IRS from the "collection" of tax – because physical torture is not a legal collection measure.

18.  The authority granted by the drafters of Section 7421 is certainly to be exercised according to what is permissible within the law.  In its Opposition, the Department of Justice never stated that the collection being pursued is legal.

19. The authorities from the earliest time to the present unanimously hold that no court will lend its assistance in any way towards carrying out illegal measures.

20. In this case, illegal measures have been pursued to collect what is alleged to be "money owed" by Plaintiff. The purpose of Plaintiff's injunction is to halt the unauthorized collection measures being committed against him – until the Court decides whether the methods being pursued are authorized or not. If the Court proves them to be so, then they could resume. If they are not, then this Court certainly cannot permit the continuation of illegality. The harm of imposing the levy on Plaintiff and allow it to continue is far greater than halting the levy now would be on Defendant.

21. This Court must immediately issue an injunction to halt all deductions from Plaintiff's Social Security and any other collection measures until this case is ruled upon by this Court. After that time, legality would be ascertained on whether any levy is needed or any tax is owed.

III.    **Levy on Social Security is unauthorized regardless of its classification**

22. Defendant is claiming that the levy on Plaintiff's social security payment was not issued as a "continuing levy" under 26 USC §6331(h) – which restricts levies to 15% -- but as a "standard levy"

under 26 USC §6331(a) – with no 15% limitation. Defendant argues that levies against Plaintiff's Social Security payments are "a one time levy under Section 6331(a)." Defendant continues: "Thus, the United States could levy more than 15% of the plaintiff's social security income."

23. Defendant has been deducting money from Plaintiff's Social Security on a monthly basis. Plaintiff is not sure how Defendant can describe a monthly continuous deduction as a "one time" levy. However, Plaintiff is willing to argue based on Defendant's classification.

24. 26 CFR §301.6331-1(a)(1), which Defendant has cited in support of its argument, says the following:

> a levy only reaches property in the possession of the person levied upon at the time the levy is made together with interest that accrues during the 21-day holding period provided for in section 6332(c). For example, a levy made on a bank with respect to the account of a delinquent taxpayer is satisfied if the bank surrenders the amount of the taxpayer's balance at the time the levy is made. The levy has no effect upon any subsequent deposit made in the bank by the taxpayer. Subsequent deposits may be reached only by a subsequent levy on the bank.

25. This section, upon which Defendant builds its argument, specifically restricts the levy to property in the possession at the time of the levy. The bank account example specifically states that "the levy has no effect upon any subsequent deposit" and "subsequent deposits may be reached ONLY by a subsequent levy

on the bank." Subsequent levies would certainly require subsequent notices of levies. Otherwise, they would be unauthorized under the "one-time" levy argument.

26. By applying 26 CFR §301.6331-1(a)(1) to the present case, with regard to the Social Security levy, the IRS could have only levied the amount paid to Plaintiff during the one month in which the Notice of Levy was issued (if that notice is proper). Any subsequent Social Security levies could have only been levied if Defendant issued subsequent notices of levies. By taking monthly deductions from Plaintiff's Social Security checks under section 6331(a), without issuing monthly notices of levies, Defendant is acting in violation of Regulation 26 CFR §301.6331-1(a)(1) which makes it very clear that it does not extend to future earnings.

27. The future earning argument is better reflected in 26 CFR §301.6331-1(b)(1) which states that the levy has "continuous effect" and attaches "until the levy is released". An example of such a case would be a levy on salary and wages (i.e. periodic payments made to a plaintiff).

28. In addition, if Defendant' levy on Plaintiff's Social Security is a "standard levy", then Defendant is wrong in claiming that it can "legally levy up to 100%" of Plaintiff's social security benefits under 26 USC §6331(a). Under a standard levy, Plaintiff is entitled to an exempt amount of about $160 a week or $800 per month, plus

$400 per month for dependant child. Under a standard levy, Plaintiff should receive about $1,200 per month. Currently, the IRS is not taking these exempt amounts into consideration.

29. Plaintiff's Social Security check should have been (before the levy) $1,964.20 per month. Plaintiff is now receiving $704.20.   This amount falls below the exempted amounts of $800 (or $1,200 including dependant child) allowed under a standard levy.

30. In addition, the levied amount of $1,260 ($1,964.20 minus $704.20) violates the 15% limit under the Treasury Offset Program (TOP) section 6331(h). Regardless of what argument Defendant uses to define the nature of the levy, the United States cannot prevail on its claim because the amount being levied is unauthorized under any type of levy.

31. It should also be noted that the Notice of Levy of March 19, 2007 does not define on the form what type of levy it is. It makes no specific mention of section 6331(a) or (h).

32. Defendant used various terms: "standard levy", "one-time levies", "continuing levies", "non-continuing levies." As far as Plaintiff is concerned, there is only one type of levy being enforced on Plaintiff: an unauthorized levy.

33. Once again, the IRS is pursuing unauthorized collection measures. This Court must grant Plaintiff's injunction to end this unauthorized and illegal levy.

### IV.    Plaintiff is suffering irreparable harm

34. As has been proven, the levy against Plaintiff's Social Security earnings is being done against what the law requires. In the Complaint filed with the Court and the attached Affidavit, Plaintiff has outlined some of the harm suffered by him due to the actions taken by the IRS.

35. The illegal collection measures taken against Plaintiff – including the garnishment of his pay check, some of his investments, and a large percentage of his Social Security retirement benefit – caused severe and unnecessary financial hardship to Plaintiff and his handicapped son. They were denied some necessities of life, had to incur debt and not pay bills. Plaintiff lost use of his money and experienced immense costs and expended a vast amount of time and resources in contesting these invalid levies.

36. It is disrespectful – to say the least – for Defendant to levy Plaintiff's money against the law then ask Plaintiff for "evidence" or "to explain" why illegally taking money from him is harmful.

37. As Plaintiff's attached affidavit indicates, Plaintiff is the sole supporter of himself and his severely handicapped son. In addition to the costs of supporting his son, Plaintiff has had the added immense cost of this action that the Internal Revenue Service has forced him to pursue.

38. Could the Department of Justice – which seeks an explanation on why the harm caused to Plaintiff is irreparable – inform Plaintiff and this Court which part of Plaintiff's economic loss and emotional suffering is reparable?

39. Plaintiff is suffering irreparable harm, and he needs all of his Social Security payments and an end to the levy now.

## V.    CONCLUSION

40. Plaintiff was not sent all of the appropriate notices. Plaintiff was not informed of his due process rights. Plaintiff was not given the opportunity to request for a CDPH hearing.

41. The IRS attached a levy, despite the fact that it recklessly, intentionally, or by reason of negligence pursued unauthorized collection measures. The IRS levy should not have begun in the first place, and certainly should have ended when this lawsuit was filed. Every day the levy continues, Plaintiff suffers irreparable harm.

42. This Court cannot rule in Defendant's favor and permit the continuation of illegality and harm against Plaintiff until this case comes to an end. To do so, the Court would be allowing Defendant to continue its unauthorized collection measures – and that is inherently contrary to public policy.

43.   As stated before, the authorities from the earliest time to the present unanimously hold that no court will lend its assistance in any way towards carrying out illegal measures.

44.   The purpose of Plaintiff's injunction is to halt the unauthorized collection measures being committed against him – until the Court decides whether the methods being pursued are authorized or not. If the Court proves them to be so, then they could resume. If they are not, then this Court certainly cannot permit the continuation of illegality. The harm of imposing the levy on Plaintiff and allow it to continue is far greater than halting the levy now would be on Defendant.

45.   This Court must grant Plaintiff's preliminary injunction to end the levy on Plaintiff's social security payments while the Court is deciding the merit of this case. To allow the IRS levy to continue would be adding to the irreparable harm already being inflicted on Plaintiff and would be prolonging Defendant's unauthorized methods. A Court cannot lend its aid to inflict illegality.


Respectfully submitted,

____/s/ Elias Aoun_____                  Date: August 20, 2008
Elias Aoun, Esq. Bar Number 479315
1730 N. Lynn St., # A-22
Arlington, VA 22209-2004
E-mail: Lawyer2008@yahoo.com
Cell Phone 202-257-7796

## **CERTIFICATE OF SERVICE**

I hereby certify that on or about August 20, 2008 a true and correct copy

of the foregoing document was served upon the following via the Court's

ECF filing Protocol:


      Yonatan Gelblum, Esq.
      Tax Division
      Department of Justice


      __/s/Elias Aoun_
      ELIAS AOUN

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

John T. Hines,                                )
                                              )
                    Plaintiff,                )
                                              )
          v.                                  )        CASE NO: 1:08-cv-00914-PLF
                                              )
UNITED SATES OF AMERICA,                      )
                                              )
                    Defendant.                )
_____

## AFFIDAVIT OF JOHN T. HINES

John T. Hines, being of legal age and pursuant to the provisions of 28 U.S.C. §
1746(2), declares and states as follows:

1.   I am a Certified Registered Nurse Anesthetist.  I have been doing
     anesthesia for thirty-three years.

2.   As an anesthetist, I have to exhibit the ability for memory and
     proper keeping of records. Thirty-three years of anesthesia without
     a malpractice incident on my record is in itself an excellent
     reflection on my ability to perform these tasks.

3.   The first notice of intent to levy that I received for collection was
     dated in March 2007. The notices of intent to levy dated August
     23, 2004, December 26, 2005, and February 20, 2006 were never
     received by me.

4.    I have never received from the Internal Revenue Service an opportunity for a collection due process hearing (CDPH). Due to my experience in hospitals and life saving operations, I am well informed of the importance of letters, especially letters from government agencies. It is inconceivable that I would ignore three letters from a government agency.

5.    Starting in October 2007 and ending in May 2008, I wrote three preliminary letters and eighty administrative claims stating that I had never been given an opportunity for a collection due process hearing. Many of these administrative claims are attached as exhibits to the complaint that has been filed with the court. The IRS had more than one chance to deny my allegations, but never did.

6.    Once again, I did not receive the mentioned notices for a collection due process hearing. The notice of August 2004 is highly suspect. The tax years in question end in 2003. The time to file a 2003 return is April 15, 2004 and with extensions can be filed in August of that year. The normal process that the agency is required to complete (auditing, ninety day letter, etc), the earliest that an offer could have been sent out is mid 2006.

7.    In June 2005, I started attending meetings where the collection due process hearing was discussed. Knowing the importance of

collection due process hearings, there is no way that I would have ignored the last two notices dated after June 2005.

8.  In his declaration, IRS Revenue Officer Mr. Daniel Haber did not list the names of officers who sent these notices. He did not attach copies of these 2004, 2005, and 2006 notices of intent to levy and right to a due process hearing when he submitted his declaration. He did not attach a copy of the computerized transcript where it shows that they were sent out.

9.  The first notice of levy that I received was dated March 2007. Collection due process hearing (CDPH) is generally offered two months earlier. I did not receive it before the intent to levy. In my situation, the IRS did not adhere to procedure.

10. The levy is limited. If TOP is not limited to Social Security checks and regular levy can apply, the levy must be the same as any other levy, i.e. an exempt amount is about $160 weekly for me or about $800 monthly. In addition, I should be getting an exemption of half that for my handicapped son whom I am the sole support.

11. Mr. Haber states in paragraph 4 that the levy is not continuous. The Social Security Administration has treated it as a continuous levy and is still deducting money from my check.

12. I am the sole supporter of myself and my handicapped son. Since my divorce, my ex-wife has refused to provide any support for him

although he is severely handicapped. These measures for my son are continuous.

13. In addition to the costs of supporting my son, I have now had the added immense cost of this action that the Internal Revenue Service has created. There has been immense expense of both money and time that I could have devoted to bettering our life style. Instead, I have had to channel these resources to contest these illegal levies.

14. The illegal collection measures taken against me – including the garnishment of my pay check, ordering my investments to be sold and sent to the Internal Revenue Service, and an unusual amount taken from my Social Security check under the TOP – have caused and continue to cause severe and unnecessary financial hardship to me and my handicapped son. We have been denied some necessities of life, had to incur additional debt, not pay bills and credit card statements. In addition to the above, we (my son and I) have suffered anxiety, emotional distress, mental anguish, and our health problems have worsened.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 18, 2008.

John T. Hines

Requester identified, signature subscribed and sworn to before me this _18th_
day of _August_, 2008

_____
Notary Public   8/18/08

Resident of _Orange_ _____ County, FL

LINETTE BELLAMY
Notary Public - State of Florida
My Commission Expires Jan 5, 2010
Commission # DD 504370
Bonded By National Notary Assn.

_Line He Bellamy_
_exp. 1/5/10_