# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| John T. Hines, | ) | |
| | ) | |
| Plaintiff/Counterdefendant, | ) | |
| | ) | |
| v. | ) | CASE NO: 1:08-cv-00914-PLF |
| | ) | |
| UNITED STATES, et al. | ) | |
| | ) | |
| Defendants/Counterplaintiffs. | ) | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1. When a motion for summary judgment is under consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [his] favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. 2505; *see also Mastro v. Potomac Elec. Power Co.,* 447 F.3d 843, 849-50 (D.C.Cir.2006); *Aka v. Washington Hosp. Center,* 156 F.3d 1284, 1288 (D.C.Cir.1998) (en banc); *Washington Post Co. v. United States Dep't of Health and Human Servs.,* 865 F.2d 320, 325 (D.C.Cir.1989); *Mulhern v. Gates,* 525 F.Supp.2d 174, 180 (D.D.C. 2007).

2. Defendants filed a Motion for Summary Judgment on October 20, 2008. That motion should be dismissed for violating Rule 10(b) because its paragraphs are not numbered.

3. More importantly, Defendants' motion should be dismissed because it maintained positions that are contrary to the Constitution and

established law.   It advocated reasoning contrary to constitutional grounds and U.S. Supreme Court decisions. Defendants' "material facts" are based on assumptions, presumptions, and transcripts with fictional amounts – not factual information supported by conclusive, substantive evidence.

**I.     This Court has Jurisdiction over Plaintiff's request for the Return of "Property" or "Money"**

4.   Defendants claim that this Court lacks subject matter jurisdiction over Plaintiff's request for a "tax refund."   To substantiate their point, Defendants cite *Lindsey v. United States*, 448 F. Supp. 2d 37, 60-61 (D.D.C. 2006), 26 U.S.C. § 7422(a), and *United States v. Dalm*, 494 U.S. 596, 601-602 (1990).

5.   However, Defendants' citations do not apply to this case because they relate to the "refund of taxes" or "recovery of an internal revenue tax." *Lindsey* covers "taxpayers" who "sought refund of taxes already collected."

6.   In this case, Plaintiff is a **"nontaxpayer"** for the reasons outlined herein. Plaintiff is seeking "property" or "money" wrongfully levied, and not refund of "taxes" collected.

7.   When Defendants wrote in their affirmative defenses of September 9, 2008 that "Plaintiff seeks a refund," Plaintiff did not know that Defendants were referring to the "return" of all levied funds that Plaintiff

asked for.   Otherwise, Plaintiff would have explained the issue in his motion to strike the affirmative defenses.

8.   The term "refund" is usually defined as: sums of money received and are to be refunded to the party paying them.   In most cases, the party receiving the refund is the party that made the payments.

9.   On the other hand, "return of property" is the term used in the event of a wrongful levy of "property" or "money" such as stated in 26 USC 6343(b) – not "taxes."

10.   Plaintiff is seeking the return of money wrongfully levied by the Internal Revenue Service (IRS).   Section 26 USC 6343(b) places no requirements upon Plaintiff to file a claim.   Once it is determined that a "property" or "money" was wrongfully levied, then it must be returned.

11.   This Court has jurisdiction to decide on the wrongfulness of the levy. The return of property would be a natural consequence to the decision. If a property is taken wrongfully, it is expected that it should be returned to its rightful owner and not kept by the party that wrongfully took it.

12.   Defendants' arguments under Part I of their Summary Judgment are irrelevant and do not apply to this case.

## II.   The Due Process Notice

13.   Defendants state that Plaintiff was sent notices required under section 6330(a).   Plaintiff argues that he did not receive those notices.   Both

parties offered affidavits to support their claim. Whom should the Court believe?

14. All justifiable inferences on this issue – as any other in this motion – are to be drawn in Plaintiff's favor.

15. Defendants claim that their transcripts (Exhibits 105 – 111) enjoy "a presumption of correctness" absent "clear and specific evidence to the contrary."   As Plaintiff will show, there is plenty of clear and specific evidence to convince the Court that the IRS acted negligently and did not follow proper procedure.


There is a possibility that Defendants' transcripts contain errors

16. GAO Audit reports on the IRS for years 1993 through and including 2005 establish that IRS records are generally unreliable, IRS permits employees to make underlined unauthorized access and modifications to "taxpayer" information, IRS cannot ensure that manual entries are appropriate and authorized, **IRS' automated records contain errors**, many assessments were erroneous, and the list goes on.

17. Based on this information, there is a possibility that the transcripts (Exhibits 105 – 111) contain errors. Regardless of how remote that possibility may be, it would still have to be justifiably inferred in Plaintiff's favor.

<u>Defendants are required to preserve records</u>

18. The Federal Records Act, 44 USC 3101, the National Archives Act, 44 USC 3106, and federal regulations, at 36 CFR Part 1222, require the IRS to make and preserve records containing adequate and proper documentation.

19. In this case, the IRS did not keep the proper records since it did not produce a copy of even one of the three notices that were presumably sent to Plaintiff.  They seem to have copies of other documents, but not the due process notices.  Defendants did not offer an explanation as to why copies of these notices were not preserved similar to other records produced.

20. If the IRS has copies of the Notices of Levies, there is no reason why they should not have kept copies of the Due Process Notices that relate to the levies.

21. The IRS did not even produce a sample copy of the due process notices that might have been sent, so that Plaintiff and the Court could ascertain the content of the form – if it contains information that could be used in this case, such as the rate or character of the levy.

<u>Defendants did not comply with 26 USC 6330(a)(2)(c)</u>

22. 26 USC § 6330, notice and opportunity for hearing before levy, states as follows:

> (a) Requirement of notice before levy
> > (1) In general

No levy may be made on any property or right to property of any person unless the Secretary has notified such person in writing of their right to a hearing under this section before such levy is made. Such notice shall be required only once for the taxable period to which the unpaid tax specified in paragraph (3)(A) relates.

(2) Time and method for notice
The notice required under paragraph (1) shall be -
    (A) given in person;
    (B) left at the dwelling or usual place of business of such person; or
    (C) sent by certified or registered mail, return receipt requested, to such person's last known address;

not less than 30 days before the day of the first levy with respect to the amount of the unpaid tax for the taxable period.

23.   The language of 26 USC 6330 makes it clear that NO LEVY may be made until a person is notified in writing.  The method of such a notification is described in 26 USC § 6330(a)(2).

24.   Defendants claim that the notices were "sent" by mail. Therefore, it can be concluded that (1) Plaintiff did not receive IN PERSON any of the three notices listed in Mr. Haber's declaration of August 8, 2008; and (2) none of these notices were left at Plaintiff's DWELLING OR USUAL PLACE OF BUSINESS.  The remaining issue is whether the notices were sent as required by § 6330(a)(2)(c).

25.   Defendants claim that Plaintiff was "sent this notice" and that should be their "proof of compliance."  However, their conclusion is not accurate because compliance is not in merely sending the notice, but to send it "by certified or registered mail, return receipt requested, to such person's last known address." 26 USC  § 6330(a)(2)(c)

26. Defendants also claim that there is no requirement for actual receipt. However, the correct language in 26 CFR 301.6330-1 [Q-A9 and A-A9] is that the notice must have been "properly sent" to be considered sufficient and to make actual receipt no longer a prerequisite for validity. The evidence presented herein proves that the notices were not properly sent.

27. Defendants' transcripts, pleadings, exhibits, and affidavits offer no evidence of certified mailing.  With justifiable inferences being drawn in Plaintiff's favor, the Court should conclude that Defendants were negligent and did not properly comply with 26 USC 6330(a)(2)(c).

28. Since Defendants did not pursue a proper notification method, then NO LEVY should have taken place.


Defining "Last known address"

29. According to 26 CFR 301.6212-2(a)(2) "The IRS will update taxpayer addresses maintained in IRS records by referring to data accumulated and maintained in the United States Postal Service (USPS) National Change of Address database that retains change of address information for thirty-six months (NCOA database) . . .  the new address in the NCOA database is the taxpayer's last known address . . ." (Emphasis added)

30. 26 CFR 301.6212-2 offers the following "Example 1":

> (i) A is an unmarried taxpayer. The address on A's 1999 Form 1040, U.S. Individual Income Tax Return, filed on April 14, 2000, and 2000 Form 1040 filed on April 13, 2001, is 1234 Anyplace Street, Anytown, USA 43210. On May 15, 2001, A informs the USPS of a new permanent address (9876 Newplace Street, Newtown, USA 12345) using the USPS Form 3575, "Official Mail Forwarding

Change of Address Form." The change of address is included in the weekly update of the USPS NCOA database. On May 29, 2001, A's address maintained in IRS records is changed to 9876 Newplace Street, Newtown, USA 12345.

(ii) In June 2001 the IRS determines a deficiency for A's 1999 tax year and prepares to issue a notice of deficiency. The IRS obtains A's address for the notice of deficiency from IRS records. On June 15, 2001, the Internal Revenue Service mails the notice of deficiency to A at 9876 Newplace Street, Newtown, USA 12345. For purposes of section 6212(b), the notice of deficiency mailed on June 15, 2001, is mailed to A's last known address.

31.  26 CFR 301.6212-2 offers the following "Example 3":

(i) C and D are married taxpayers. The address on C and D's 2000 Form 1040, U.S. Individual Income Tax Return, filed on April 13, 2001, and 2001 Form 1040 filed on April 15, 2002, is 2468 Spring Street, Little City, USA 97531. On August 15, 2002, D informs the USPS of a new permanent address (8642 Peachtree Street, Big City, USA 13579) using the USPS Form 3575, "Official Mail Forwarding Change of Address Form." The change of address is included in the weekly update of the USPS NCOA database. On August 29, 2002, D's address maintained in IRS records is changed to 8642 Peachtree Street, Big City, USA 13579.

(ii) In October 2002 the IRS determines a deficiency for C and D's 2000 tax year and prepares to issue a notice of deficiency. The Internal Revenue Service obtains C's address and D's address for the notice of deficiency from IRS records. On October 15, 2002, the IRS mails a copy of the notice of deficiency to C at 2468 Spring Street, Little City, USA 97531, and to D at 8642 Peachtree Street, Big City, USA 13579. For purposes of section 6212(b), the notices of deficiency mailed on October 15, 2002, are mailed to C and D's respective last known addresses.

32.  Defendants' claim that Plaintiff's "last known address" is the address listed on his 1999 return cannot be true.  The "last known address" under 26 USC 6330(a)(2)(c) is the last address update in the USPS NCOA database.

33.  When Plaintiff would move from one location to another, he would fill-out the proper form at the post office to forward his address.  The address change was usually done during the month in which Plaintiff has moved. According to the examples presented above: "The change of address is included in the weekly update of the USPS NCOA database."  Based on the two examples, the IRS should have had access to every address update made by Plaintiff.

34.  If the IRS had sent all three notices of August 2004, December 2005, and February 2006 to only the address listed on the 1999 return, then the IRS had acted negligently.   There is no excuse for the IRS to be sending notices to an old address when they have access to the WEEKLY update of the USPS NCOA database.

35.  Moreover, Defendants' Exhibits 101 and 102 (dated in 2006) list a "Long Beach, CA" address for Plaintiff.  First, Plaintiff left California in 1970. Plaintiff visited Long Beach in or prior to 1970, but did not live there. Plaintiff had not been to California for over thirty years.

36.  If Defendants were still using a 1970 false address on 2006 forms, it is possible that they sent all three Due Process notices (which precede the dates of Exhibits 101 and 102) to the California address – and not to the address on Plaintiff's 1999 tax return.

37.  Posting a California address on Exhibits 101 and 102 is a clear indication of negligence.  It also indicates that Defendants' exhibits and transcripts cannot be relied upon for accuracy.

38. With justifiable inferences being drawn in Plaintiff's favor, the Court should conclude that Defendants were negligent and did not properly comply with 26 USC 6330(a)(2)(c) and 26 CFR 301.6212-2(a)(2). Since Defendants did not pursue a proper notification method, then NO LEVY should have taken place.

The IRS knew Plaintiff's correct address before most levies

39. Defendants' claim that they sent the notices to the "last known address," implied that they did not know Plaintiff's "current" address.

40. During the oral argument before the Court, Plaintiff's attorney was mistakenly under the impression that the communication between Plaintiff and the IRS was ongoing throughout. He later was reminded by Plaintiff that he did not communicate with them for few years. However, this does not change the following facts:

41. The IRS knew for certain of Plaintiff's "correct" address at least around February 2007 when an IRS document was placed on Plaintiff's door.

42. Exhibit 103 shows a correct "Saint Cloud, FL" address as of March 2007.

43. The forced sale of Plaintiff's investment was in May 2007. The levies on Plaintiffs professional pay were in May 2007 and January 2008.  These events took place AFTER the time when the IRS knew of Plaintiff's current residence.

44. Plaintiff's Social Security benefits were levied between October 2006 and March 2007.  The levy was re-instated in January 2008. In 2008, the IRS certainly knew of Plaintiff's correct address.

45. In addition, the Social Security Administration (SSA) should have had Plaintiff's address all along.  The IRS could have gotten Plaintiff's current address from the SSA during any time period.

46. The IRS could have offered a due process notice/hearing in early 2007 when they had Plaintiff's correct address and before levying his professional pay and forcing the sale of his investment.


The Post-levy notice

47. 26 CFR 301.6330-1 [Q-A7 and A-A7] discusses the issuance of a "post-levy CDP notice."  Plaintiff had not received such a notice after the levies were made – and at a time when there is no doubt that the IRS clearly knew his correct address.

48. There is no indication (as far as Plaintiff could find) in Defendants' transcripts to indicate that any post-levy notices were sent out. Therefore, the Court should conclude that Defendants were negligent by not complying with this procedure.


The IRS had opportunities to rectify the "mistake," but did not

49. In a letter filed with the Court as Exhibit L, Plaintiff partially recounts a phone conversation between him and an IRS agent Robert Shoreman on

February 29, 2008.  At that time, the agent's phone number was (904) 665-0835.

50.  Mr. Shoreman was made aware that Plaintiff did not get a CDP hearing, but he told Plaintiff that the IRS could collect money without a hearing. He also told Plaintiff that he did not have to give him the law.

51.  On that date, Mr. Shoreman had an opportunity to send the notice of due process hearing, but he did not.  The conversation clearly shows Defendants' lack of concern and indifference to whether or not Plaintiff receives a hearing. The IRS could still have a voice recording of that conversation.

52.  In addition, Plaintiff informed about seven different IRS offices that he did not receive a due process notice.  He wrote letters such as in Exhibits C, I, and L, informing the IRS that he never had a due process hearing. His many administrative claims sent to the IRS and filed previously with the Court – such as Exhibits G, J, K, M, and N through Z – all include reference to not having received a due process notice or a CDP hearing.

53.  In 26 CFR 301.6330-1, we find the following Q&A:

> *Q-A10.* What if the taxpayer does not receive the CDP Notice because the IRS did not send that notice by certified or registered mail to the taxpayer's last known address......?
>
> *A-A10.* When the IRS determines that it failed properly to provide a taxpayer with a CDP Notice, it will promptly provide the taxpayer with a substitute CDP Notice and provide the taxpayer with an opportunity to request a CDP hearing....

54.  In this case, from all the IRS offices that were informed through Plaintiff's communication that he did not receive a CDP Notice or hearing, not a

single one of them wrote him back to inform him if/when the notices were sent or at least mail another notice to him.

55. Defendants presented no explanation whatsoever on why Plaintiff's communication were never responded to, or why the IRS did not send him another notice when he clearly stated on various occasions that he did not receive one.

56. The IRS approach of not responding to Plaintiff's requests was contrary to the "presumption of regularity accorded to official acts." With justifiable inferences being drawn in Plaintiff's favor, the Court should conclude that the IRS was negligent.

Summary

57. In Summary, Defendants' transcripts might contain errors; Defendants did not preserve copies of the due process notices; Defendants did not comply with 26 USC 6330(a)(2)(c); the "last known address" is the last address update in the USPS NCOA database and not the one listed on Plaintiff's 1999 return; the IRS knew Plaintiff's correct address before most of the levies; the IRS did not send Plaintiff the post-levy notice; the IRS had more than one opportunity to rectify the situation – regardless of whose fault it was – but never did.

58. There is plenty of evidence to support Plaintiff's claim that the IRS was reckless or negligent in the notification process. Any one of the facts presented herein is a justifiable inference in Plaintiff's favor.

59. Therefore, the arguments presented in Part II of Defendants' motion for summary judgment clearly fail. "Clear and specific evidence" does exist to rebut the "presumption of regularity."

## III.   26 USC 6331(a) is not applicable to Plaintiff

60. Defendants allege that Plaintiff's Social Security benefits were levied under the general levy provision 26 USC 6331(a), issued on paper forms 668-A and 668-W, and "can thus be levied without resort to section 6331(h) and its 15% limit."

61. If a law provides for an authority to tax, it does not mean that the rate of the tax is unlimited or that the tax rate equals 100% of the property value. The tax rate would be defined, or there would be a schedule or rate table defining the tax in question.

62. Similarly, if section 6331(a) provides an authority to levy, that levy is not necessarily of unlimited bounds. What is the rate of levy permissible under 6331(a)? If it is not 6331(h), Defendants did not provide an alternative rate defined within Title 26 or elsewhere.

63. Since a tax must be imposed by clear and unequivocal language, so should a levy. For Defendants to claim that the levy against Plaintiff is only under 6331(a) and that section has no specific language as to the rate of levy to be imposed, then it is invalid by itself as a levy provision.

64. Levying about 60% of Plaintiff's Social Security benefits is based on Defendants' opinion that "the Service can." Defendants want the Court

to believe that if a levy is permitted, then the rate of the levy is unlimited. However, there is a fact that cannot be ignored: Both (a) and (h) are within 6331, and (h) is a limit on (a).

Notice at the time of the levy

65.  The proper manner to measure Defendants' position is to look at the content of the notices issued <u>at the time</u> of the levy, and not the arguments made at the present.

66.  Defendant's Exhibits 101-104 submitted along with its motion for summary judgment are "notices of levy issued to the Social Security Administration on paper . . ." – according to Mr. Daniel Haber's declaration of October 2, 2008 (Paragraph 4).

67.  These notices do not state on their face whether they were issued under section 6331(a) or 6331(h).  These exhibits do not also include copies of the back side of the original notices – if the original had something printed on their back. If they did and were not copied, then Exhibits 101-104 are partially produced or not totally accurate.  Defendants did not even offer a sample IRS notice which indicates that a levy could be made for more than 15%.

68.  Since Plaintiff does not have a copy of the original notices, Plaintiff assumes that the standard followed would have been consistent with a sample notice on the IRS website titled "Final Notice Before Levy on

Social Security Benefits" which states that the "law allows the IRS to take up to 15% of your Social Security benefits...." (Exhibit A12).

69. Plaintiff's conclusion is re-affirmed by a letter dated November 4, 2008 and sent to Plaintiff by the Social Security Administration (Exhibit A13). The letter indicates that the Treasury "levies up to 15 percent of the monthly Social Security benefits until the debt is paid."

70. It is the obligation of the IRS to inform anyone it addresses about the statutory basis of its action <u>at the time it seeks to enforce those actions</u>. Based on Defendants' Exhibits, no explanation was given to the statutory rate of the levy.   Whatever arguments presented now by Defendants should be classified as attempts to justify unauthorized collection.

71. Based on the available facts presented to the Court – Exhibits A-12 and A-13 – there is a levy limit of 15%, and Defendants had violated that limit.

## The Exemption under Section 6331(a)

72. The IRS levy under Section 6331(a) is not subject to all property and rights to property as Defendants wish to imply.   The section makes an exemption from levy for property listed under 26 USC 6334.   One of the provisions that is useful in this case is 6334(a)(9) which is subject to exemptions made under 6334(d)(2).

73. Plaintiff is not clear what the exact calculations would entail, especially with regard to 6334(d)(2)(A)(ii).   Plaintiff would only state that he is now

receiving about $704.20 from his Social Security benefits.  Plaintiff would leave it to the Court to decide whether that amount is within the "exempt amount" for the purpose of finding if the IRS is in violation in this regard.

Section 6331(a) analysis based on Exhibit 112

74.  Plaintiff did not write the Code or any other law.  Herein, he is only reciting what is written.

75.  Defendants' Exhibit 112 [5.11.7.2 and 5.11.7.2.1] makes the following claims: (1) FMS administers the TOP to collect NON-TAX debt for FEDERAL AGENCIES . . . by levying FEDERAL PAYMENTS; (2) IRC 6331(h) . . . authorizes the IRS to issue continuous levies on certain FEDERAL PAYMENTS.

76.  By using the government's language and applying it to this case, we reach the following results: (1) Defendants had stated in the past that the IRS is not a federal agency; (2) TOP is limited for federal agencies as per 5.11.7.2; (3) the levy relates to federal payments as per 5.11.7.2 and 5.11.7.2.1.

77.  Let us assume that section 6331(a) is applicable in this case as Defendants' claim.  In line with the language of Exhibit 112, have Defendants provided statutory evidence to prove that the levy under 6331(a) is applicable to anything other than federal payments?

78.  Is it logical to claim that Exhibit 112 is ACCURATE and applies to 6331(h) restricting applicability of that provision as indicated, but

somehow the restrictions are no longer applicable once we deal with 6331(a) – both of which are within the same provision?

79. If the answer is yes, then let Defendants present the document that show that the Internal Revenue Service is statutorily authorized to levy non-federal payments under 6331(a) – as they had presented Exhibit 112 to interpret 6331(h).

80. Any ruling in Defendants' favor without this proof is a violation of the law in Exhibit 112.  Plaintiff's Mellon Investments [Exhibits A and B] and compensation from Osceola Anasthesia Associates were not "federal payments" authorized for levy.


Section 6331(a) analysis based on its own language

81. The language of Exhibit 112 is consistent with the language of section 6331(a) which states as follows:

> Authority of Secretary--If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax (and further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax. **Levy may be made upon the accrued salary or wages of any officer, employee, or elected official, of the United States, the District of Columbia, or any agency or instrumentality of the United States or the District of Columbia, by serving a notice of levy on the employer (as defined in section 3401(d)) of such officer, employee, or elected official.......**

82. Based on this language, it is evident that the levy is applicable to federal payments made to federal workers.  Plaintiff is not a covered person under this section, and the levies made against him based on 6331(a) are unauthorized.

83. The certain designation of one person is an absolute exclusion of all others.  This doctrine decrees that where law expressly describes a particular situation to which it shall apply, an irrefutable inference must be drawn that what is omitted or excluded was intended to be omitted or excluded.

84. When the compensation of federal workers is explicitly identified in this fashion, and that of non-federal workers is as prominently left out, the rules of statutory construction say unambiguously that the latter is excluded.  This understanding is reinforced by the exclusive specification in 26 CFR 301.6331-1(a)(4) (the regulatory structure by which 26 USC 6331(a) is implemented).

85. The inclusion of these specifications unambiguously contradicts any suggestion that the authority of the levy power extends beyond those entities specified.  If the compensation of literally <u>any</u> person actually can be, or lawfully is, reached by these levy provisions, then the specifications would be entirely superfluous and redundant.

86. The specifications provide proof that "any person" DOES NOT mean "each and every American," it means "any person that is among the groups specified." Also, that person has to be "liable to pay any tax."

87. Plaintiff's analysis of section 6331(a) is supported by U.S. Supreme Court's instructions in *American Banana Co. v. United Fruit Co.*, 213 U.S. 347, 357 (1909) that,

> "Words having universal scope, such as 'every contract in restraint of trade,' 'every person who shall monopolize,' etc., will be taken, as a matter of course, to mean only everyone subject to such legislation, not all that the legislator subsequently may be able to catch."

88. and in *Gould v. Gould*, 245 U.S. 151, 153 (1917) that,

> **"In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government, and in favor of the citizen."**

89. and in *62 Cases, More or Less, Each Containing Six Jars of Jam v. U.S.,* 340 U.S. 593, 600 (1951):

> "In our anxiety to effectuate the congressional purpose of protecting the public, we must take care not to extend the scope of the statute beyond the point where Congress indicated it would stop."

90. Since this Court should abide by Supreme Court instructions, then the Court should adopt Plaintiff's interpretation and conclude that Plaintiff, a private-sector worker, is not a covered person by section 6331(a).

91. This Court's judgment should be in Plaintiff's favor because the prescribed rules are in Plaintiff's favor.   Section 6331(a) has to be "construed most strongly against the government, and in favor of the citizen."   Therefore, all Defendants' arguments in Part III of their

Summary Judgment fail because Plaintiff is not subject to section 6331(a).

92.   If Defendants' attorneys are convinced with their own version about the meaning of section 6331(a), then they can sign a declaration or request from IRS agent Mr. Haber or the IRS Chief Counsel to submit a sworn declaration, invoking the penalties of perjury against the signer, stating that 26 USC 6331(a) covers Plaintiff John T. Hines.

93.   Plaintiff is entitled to damages for unauthorized levies by the IRS. Defendants' argument in favor of 6331(a) is nothing more than a plain and clear confession of illegality.


Defendants' "forms"

94.   Defendants assert on page seven of their memorandum: The forms state that they reach Plaintiff's "property and rights to property . . . which you are *already obligated* to pay this person," or his income "that you *have now or for which you are obligated*." (Exhibits. 101-104.) [Emphasis added]

95.   The "forms" are not law and do not specify the statutory basis of their content.  If the basis is section 6331(a) as Defendants claim to be the basis for the levies, then the forms do not apply to Plaintiff who is not covered by that section – and, therefore, the forms' content is meaningless vis-à-vis Plaintiff.

96. Since Exhibits 101-104 are the notices of levies "issued to the Social Security Administration on paper" (as Mr. Haber indicated), then one has to assume that the copies presented are accurate copies of what was actually "issued" – and therefore lack the full provision of section 6331(a).  Therefore, these notices were potentially misleading to the party acting upon them.

97. Defendants want the Court to assume that their "notice of levy" has universal applicability.  However, their ploy is exposed by leaving section 6331(a) off the form and/or not submitting it.

Summary

98. In summary, the IRS issued a Form 668-A and/or 668-W to a third party and asked that third party to confiscate Plaintiff's property for them under the color of law.  Only those specified in 6331(a) and in 26 CFR 301.6331-1 can be levied against by a mere 'notice of levy' similar to the ones in Exhibits 101-104.

99. After a careful reading of Section 6331(a), it is evident that it does not even apply to Plaintiff.  Therefore, no levy whatsoever – at any percentage or amount – should be permitted against Plaintiff under this section.  Therefore, Defendants are liable for damages for unauthorized levies by the IRS.

**IV.    Plaintiff is a "nontaxpayer" for the years in question**

100. The current controversy involves alleged federal income tax liabilities for calendar years 1996, 1997, 1998, 1999, 2000, 2001, and 2003. Although Plaintiff filed tax returns for years 1996 through 1999, he later came to the conclusion that he was a **"nontaxpayer"** and stopped filing income tax returns.  His decision was based on his research and study. However, since the filing of return is necessary to rebut the IRS accusations, then he has done so and filed these returns as per Exhibits A2 through A11.

101. So far, the Internal Revenue Service (IRS) has not provided him with a section of law that gives the IRS the right to make demands of a **"nontaxpayer."**

102. In their counterclaim, Defendants assert that Plaintiff is liable for $265,581 for unpaid income taxes, penalties, and interest for years 2000, 2001, and 2003.  For these years, Plaintiff was a **"nontaxpayer."** Defendants provided no evidence to prove that Plaintiff was a "taxpayer" or that Plaintiff's revenues were lawfully taxable. Defendants simply made a false presumption on both counts and expected Plaintiff to blindly comply.

The IRS assessments for years 2000, 2001, and 2003 fail under 26 USC 6201

103. Defendants claim that their assessments are presumptively valid until "taxpayer" proves that they are erroneous.

104. Under 26 USC 6201(a), the Secretary is required to make "assessments of all taxes…. which have not been duly paid by stamp…"

105. The assessment authority determines the amount of tax, not the amount being taxed – unless the IRS has first-hand knowledge.  In that case, the burden of proof lies with the IRS as per 6201(d).

106. In the motion to dismiss the counterclaim, Plaintiff had disputed the alleged taxes owed.  In all their filings, Defendants did not provide reasonable and probative information – such as information returns (the "W-2" and/or "1099") – to prove the source of the alleged amounts on which their assessments for years 2000, 2001, and 2003 were based.

107. Furthermore, the "W-2" and/or "1099" information (if any) issued to the IRS by the businesses Plaintiff worked for are false or erroneous testimony because there is no sworn statement from the IRS stating that the payments made to Plaintiff are of the specialized character for which W-2s and 1099s are appropriate.

108. Defendants offered Plaintiff no evidence to the statutory basis for the alleged liability; Defendants offered no evidence to substantiate that Plaintiff is a "taxpayer;" Defendants offered no evidence to prove the source of the alleged amounts on which their assessments were based.  Therefore, Defendants' prima facie case lacks <u>sufficient</u> evidence and fails even the simple test of section 6201.

109. Defendants make whatever "presumption" they want, and then place the burden on Plaintiff to prove their presumption to be false – while in the

meantime offer no foundational statutory reasoning to support their "presumptions."

"Taxpayer" v. "Nontaxpayer"

110. "They [**the revenue laws**] **relate to taxpayers**, and not to non-taxpayers**. The latter are without their scope.   No procedure is prescribed for non-taxpayers, and no attempt is made to annul any of their rights and remedies in due course of law**." *Economy Plumbing and Heating v. United States*, 470 F.2d 585, 589 (1972).  [Emphasis added]

111. Internal Revenue Code, Section 7701(a)(14):  "The term 'taxpayer' means any person subject to any internal revenue tax."

The income tax is not a tax on all income

112. The income tax is not a tax on all income, but a tax on only a specialized subset of the larger class of income.  To be a "taxpayer" and subject to an internal revenue tax, a person must conduct an activity that is subject to an indirect excise/privilege tax.

113. ". . . **taxation on income** was in its nature **an excise** entitled to be enforced as such . . ." *Brushaber v. Union Pacific Railroad Co.,* 240 U.S. 1, 17 (1916).

114. "**The income tax** is, therefore, not a tax on income as such.  It **is an excise tax** with respect to certain activities and privileges which is measured by reference to the income which they produce.  The income is

not the subject of the tax: it is the basis for determining the amount of tax."   F. Morse Hubbard, Treasury Department legislative draftsman. House Congressional Record, March 27th 1943, page 2580.

115. "When a court refers to an income tax as being in the nature of **an excise**, it is merely stating that the tax is not on the property itself, but rather it **is a fee for the privilege of receiving gain from the property**. The tax is based upon the amount of the gain, not the value of the property." John R. Luckey, Legislative Attorney with the Library of Congress, "Frequently Asked Questions Concerning the Federal Income Tax" (C.R.S. Report for Congress 92-303A (1992)).

116. "**Excises** are 'taxes laid upon the manufacture, sale or consumption of commodities within the country, upon licenses to pursue certain occupations, and upon corporate privileges.' . . . the requirement to pay such taxes **involves the exercise of privileges** . . ." *Flint v. Stone Tracy Co.*, 220 U.S. 107, 151-152 (1911).

117. "The terms '**excise tax**' and '**privilege tax**' are synonymous.  The two are often used interchangeably."  *American Airways v. Wallace*, 57 F2d 877, 880 (D.C. Tenn. 1932).

118. "We must reject . . . the broad contention submitted in behalf of the government that all receipts—everything that comes in—are income . . ." *Southern Pacific Co. v. Lowe*, 247 U.S. 330, 335 (1918).

119. "It is to be noted that by the language of the Act, **it is not 'salaries, wages or compensation for personal service' that are to be included**

in gross income.  **That which is to be included is 'gains, profits and income derived' from salaries, wages or compensation for personal service.**  Salaries, wages or compensation for personal service are not to be taxed as an entirety unless in their entirety they are gains, profits and income.  Since, also, it is the gain, profit, or income to the individual that is to be taxed, it would seem plain that it is only the amount of such salaries, wages or compensation as is gain, profit or income to the individual, that is, such amount as the individual beneficially receives, for which he is to be taxed." *Lucas v. Earl,* 281 U.S. 111, 112 (1930).

The Sixteenth Amendment

120. The 16th Amendment "**conferred no new power of taxation** . . ." *Stanton v. Baltic Mining Co.,* 240 U.S. 103, 112 (1916) and "**does not extend the taxing power to new or excepted subjects** . . ." *Peck v. Lowe*, 247 U.S. 165, 172 (1918).

Occupations of Common Right are not Taxed

121. "The right to follow any of the common occupations of life is an inalienable right. . . ." *Butcher's Union v. Crescent*, 111 U.S. 746, 762 (1884).  ". . . the property which every man has in his own labor, as it is the original foundation of all other property, so it is the most sacred and inviolable." *Id* at 757.

122. "Included in the right of personal liberty and the right of private property—partaking of the nature of each—is the right to make contracts for the acquisition of property.  Chief among such contracts is that of personal employment, by which labor and other services are exchanged for money or other forms of property."  *Coppage v. State of Kansas*, 236 U.S. 1, 14 (1915).

123. "**PRIVILEGE**: <u>A particular and peculiar benefit</u> or advantage enjoyed by a person, company, or class, <u>beyond the common advantages of other citizens</u>.  An exceptional or extraordinary power or exemption.  A right, power, **franchise**, or immunity held by a person or class, against or beyond the course of the law."  <u>*Black's Law Dictionary*</u>, 4th edition.

124. Common occupations are an inalienable right and "common advantages," not the exercise of a privilege.  For a government to tax revenue simply as an exercise of raw power is for that government to tax a person's exercise of the fundamental, individual, common law right to work or trade.  That was not the intent of the internal revenue law when it was originally enacted, nor is there a constitutional or statutory proof that this is the intent today.

125. Following is a quote taken from the first income tax return

> *"I hereby certify that the following is a true and faithful statement of the gains, profits, or income of _____ _____, of the _____ of _____, in the county of _____, and State of _____, whether derived from any kind of property, rents, interest, dividends, salary, or from any profession, trade, employment, or vocation, or from any other source whatever, subject to an **income tax** under the **excise laws** of the United States."* (Emphasis added.)

Taxation on Federal Sources of "Income"

126. There is a tax on the income of employees of the federal government and on revenues in which the federal government has a direct ownership interest. In no respect whatsoever does the FEDERAL Income Tax purport to be anything but the limited, specialized tax that it must be, or to touch upon any revenues beyond the constitutional limits set for it.

Summary

127. Based on this brief summary of the federal income tax, Plaintiff did not owe a **federal-indirect-excise-privileged-income tax** for the years in question.  Plaintiff had not enjoyed the use of any federal property or any federally-conferred privilege to be or to do anything.   Plaintiff worked as a matter of common right and not as a matter of conferred privilege, state or federal.

128. Defendants failed to prove that Plaintiff's compensations for the years in question were derived from a federally conferred privilege, or were federally connected – and upon which any assessment or tax liability has arisen.   Defendants' allegation that Plaintiff owed them $265,581 is based on false assumptions that lack evidentiary support or legal validity.  How did they calculate those numbers in the first place, and on what evidence did they rely?

129. They probably expected to scare Plaintiff for filing a lawsuit against them by initiating a counterclaim alleging an extortive amount owed. In reality, their amount is laughable, fictitious, and surreptitious.

130. Defendants have "presumed" that Plaintiff is a "taxpayer" and all his income is taxable.  Plaintiff has offered clear and specific constitutional and U.S. Supreme Court rulings to negate Defendants' presumption.

131. Plaintiff had sent various letters to the IRS asking them about their jurisdiction and authority.  The IRS refusal to respond only served to persuade Plaintiff that he is right in declaring himself as a **"nontaxpayer"** for the years in question.

132. If Defendants' attorneys are convinced that Plaintiff is a "taxpayer" and his compensations for the years in question are taxable for being derived from the exercise of a federal privilege, or any taxable activity, then they can sign a sworn declaration or request from IRS agent Mr. Haber or the IRS Chief Counsel to submit a sworn declaration, invoking the penalties of perjury against the signer, stating that to be the case. Otherwise, their allegations are based on attributing the fruits to a different tree from that on which they grew.

133. Defendants' counterclaim must be dismissed and Plaintiff should be awarded damages for unauthorized "tax" collection measures.

**V.   Clarification over Plaintiff's motion to dismiss the counterclaim**

134. In Plaintiff's motion to dismiss the counterclaim, Plaintiff's attorney made a mistake in applying the meaning of Fed. R. Civ. P. 13 and stands corrected.

135. Plaintiff believes that his other allegations in his Motion to Dismiss the Counterclaim are clear.   Whether Plaintiff interpreted the meaning of Fed. R. Civ. P. 10 properly will be decided or clarified by the Court.

136. FRCP Rule 10 states that a pleading "must name all the parties." Plaintiff interpreted this to mean the following:  When the United States made the Internal Revenue Service (IRS) a new party in its counterclaim/pleading of September 9, 2008, then it should have initially included the name of the IRS in the caption of the first pleading in which the IRS was introduced as a party.  Since that was not done, a violation of Rule 10 took place for not naming "all the parties" in the pleading that introduced a new party.   It is Plaintiff's understanding that a counterclaim is synonymous to a new complaint and must be treated accordingly by listing all parties.

137. In addition, Plaintiff did not ignore Rule 12(b)(6) in his motion to dismiss the counterclaim as Defendants allege.  As a matter of fact, Plaintiff cited that rule.

138. However, Plaintiff argued that conclusory allegations, without any supporting evidence, are not enough. Defendants had an obligation to provide the grounds of entitlement to the relief they sought – instead of

simply presenting certain dollar figures to the Court and draw the conclusion that Plaintiff is liable.  From what information returns did the figures come from, and what is the statutory basis for Plaintiff's liability? Defendants did not explain.

139. Even their Exhibits 105 – 111 are certified as "a true Form 4340." On the last page of some exhibits, a certifying officer claims that the ". . . transcript . . . in respect to the taxes specified . . . is a true . . . transcript . . . as disclosed by the records of this office . . ."

140. The "Form 4340" and the "transcript" may be true, but there is no certification to the lawfulness of the "taxes specified" or to the accuracy or validity of the "records of this office."


**VI.    Clarification over Plaintiff's Crossclaim**

141. Defendants claimed that the relief sought by Plaintiff under 26 USC 7214 was a "private right of action."   However, the caption of Plaintiff's crossclaim listed the United States of America, the Internal Revenue Service, and the Department of Justice.  The parties sued are the ones listed in the caption, not the personal names mentioned in the pleading.

142. After all, it was defendants who first mentioned those names in their counterclaim – and that was not taken by Plaintiff as a "private right of action."  Plaintiff had to mention the names within the text to make the link between the counterclaim and the crossclaim and to draw the Court's attention to what specific violations Plaintiff is referring to.

143. In addition to violating section 7214, all Defendants' attorneys and those named in their pleading as approving the counterclaim are also in violation of the Constitution and their oath as attorneys – as it is explained in Part VIII of this document.

144. Moreover, the ABA Model Code of Professional Responsibility EC 7-14 states:   "A government lawyer in a civil action or administrative proceeding has the responsibility to seek justice and to develop a full and fair record, and he should not use his position or the economic power of the government to harass parties or to bring about unjust settlements or results."

145. In this case, Plaintiff is an elderly with health problems and has an autistic son.   He came to the Court with a simple request to end illegal collection measures pursued by the IRS.   Instead of addressing the original issues, Defendants chose to file a counterclaim.

146. Plaintiff perceived Defendants' counterclaim as a form of harassment for bringing a suit against the IRS.   Plaintiff answered with a crossclaim to make it clear that Plaintiff will not be intimidated and will pursue his rights against all those who will undermine it.

147. In violation of ABA rules, Defendants are using the economic power of the government against a Plaintiff to harass him and bring about an unjust result.

## VII.  The Anti-Injunction Act is not applicable to this case

148. At 26 USC 7421(a), Congress has provided that,

> *. . . [N]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.*

149. Defendants are relying on this language to thwart Plaintiff's injunctive relief and complaint which is based on 26 USC 7433.   However, the Anti-Injunction Act (AIA) is not applicable to this case.

150. The AIA concerns the "assessment or collection of any tax."  It does not prohibit restraining the ILLEGAL assessment and collection of tax.  What would happen to this country if IRS agents could simply grab any property they choose in the name of "tax collection" and then deny the property owner the right to sue under the guise of the AIA?

151. Before Defendants even mention the AIA, they must first prove that their action is legal and according to prescribed standards.  As described herein and in prior pleadings, the IRS actions in this case are ILLEGAL and no AIA will save them to continue their illegality.

152. Section 7421 was drafted to be exercised according to what is permissible within the law.   The authorities from the earliest time to the present unanimously hold that no court will lend its assistance in any way towards carrying out illegal measures.

153. The AIA only applies to IRS actions to collect or assess <u>taxes</u>, not merely IRS efforts to collect, seize, extort or retain money.   Agency activity to collect (or retain) anything other than in connection with a <u>formally and legally defined liability</u> is mere piracy, and is not protected by the act in any fashion whatever.

154. Whether an amount can be characterized as a tax, and/or whether any tax is due for collection, is dependent on the existence of a PREVIOUSLY "defined liability."  That is the position held by courts at all levels.  Any amount which exceeds liability is not, and never was, an amount of tax.

155. As explained in this filing, Plaintiff is a **"nontaxpayer"** for the years in question and is not "liable" for any "tax" during those years. Plaintiff's lawsuit is not restraining any tax-related activity.   He is seeking to restraint the theft of his "property" and/or "money".

156. The main argument presented by Defendants is that Plaintiff's liability is based on the "presumption of correctness."   In other words, anyone could print statements and mail them out to people asking for payments. Any recipient who disagrees has the burden of proof to provide "clear and specific evidence" to counter the allegation of owing money to the mailer. Anyone who questions anything is a "defier" who will be forced to beg the mailer for mercy once the "penalties" begin to add up.

157. This is the scam logic presented by Defendants and under which Plaintiff is found "liable."   Did Defendants describe the nature of Plaintiff's monetary compensation, whether Plaintiff engaged in a taxable activity,

the amount of that taxable activity, the evidence corroborating the amount, and the rate by which the tax was finally calculated?  Certainly not.

158. Defendants simply said:  "You are 'liable' because we said you are 'liable.'  We'll steal from you everything we can get our hands on. If you sue us, we'll just hide behind 'the government' and claim that we cannot be sued.  You'll even have to show 'irreparable harm.'  If we take 60% of your paycheck and leave you 40% then that should be good enough for you to buy bread and cookies.  We can harm you, but not irreparably because you are our slave.  We need you to continue working so that we can continue on robbing you."

## VIII. The "frivolous" argument

159. In Part VI of Defendants' Summary Judgment, Defendants stated: "Plaintiff has maintained positions that are frivolous and groundless, and should thus be held liable for a penalty under 26 U.S.C. § 6673(b)(1) . . . Frivolous, in the context of section 6673, has been interpreted as "contrary to established law and unsupported by a reasoned, colorable argument for change in the law." *Coleman v. Commissioner*, 791 F.2d 68, 71 (7th Cir. 1986). *See also Casper v. Commissioner*, 805 F.2d 902, 906 (10thCir.1986)("total rejection of well-established legal precedent" is frivolous). Groundless means lacking factual basis. *Casper*, 805 F.2d at 906. Because the plaintiff's filings in this action have lacked a valid legal

or factual basis, the Court should require the plaintiff to pay this penalty . . . He ignored black letter law . . ."

160. Plaintiff's answer is simple:  We shall see who is litigating contrary to "black letter law," who is rejecting well-established legal precedent, who lacks factual basis, who is ignoring what, and who should be penalized for what.


How the IRS defines "frivolous"

161. Black letter law is irrelevant to the IRS because it has its own definitions. One of these definitions is that a constitutional argument equates frivolous.

162. Exhibits A14 and A15 are copies of documents used internally by the IRS equating "constitutional" with "frivolous." Exhibit A16 is a letter sent by the IRS stating that "Appeals . . . does not consider . . . constitutional . . . grounds."  In other words, in the minds of the IRS and the Department of Justice (DOJ), constitutional arguments are "frivolous."   This would be correct if a person was in a contractual relationship with the federal government, a federally connected worker in the public sector, and therefore a "taxpayer."

163. However, since Plaintiff is not engaged in any contractual relationship with the federal government, is not a federally-connected worker in the public sector, has refuted all presumptions of being federally-connected, and has refuted all presumptions of evidence by the filing of returns

[Exhibits A2 to A11], he therefore enjoys no privilege conferred by the federal government.  He now can claim his constitutional rights.


The Law of the Land, above all other

164. All of Defendants' attorneys had taken an oath to "support the Constitution of the United States" when they became attorneys or as officers of the U.S. government. In the meantime, all their arguments had been contrary to their oath and "The Law of the Land" in favor of provisions and codes some of which have not even been enacted by Congress into positive law – specifically the internal revenue code. [Exhibit A17]

165. If there is true justice, all that Plaintiff, a private worker in the private sector, had to do is to cite the Fourth Amendment and constitutional provisions to indicate how the IRS had violated the law. Instead, Plaintiff had been forced to argue Title 26 citing its definitions and proving that he is not a "taxpayer."

166. According to the U.S. Constitution, Article I, Section 2: "direct taxes shall be apportioned among the several states"

167. Article I, Section 9: "No capitation, or other direct, tax shall be laid, unless in proportion to the Census or Enumeration…"

168. The Fourth Amendment to the U.S. Constitution:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but <u>upon probable cause</u>, <u>supported by Oath or affirmation</u>, and particularly

describing the place to be searched, and the persons or things to be seized."

169. The Fifth Amendment reads: "No person shall be  . . .  deprived of life, liberty, or property, without due process of law."

170. The  Fourteenth Amendment to the U.S. Constitution reads: "No State shall deprive any person of life, liberty, or property, without due process of law  . . . "

171. The Fourteenth Amendment, Section 3, states: "No person shall....hold any office, civil or military, under the United States.....who, having previously taken an oath, . . . as an officer of the United States.... to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof."

172. Article III, Section 3: "Treason against the United States, shall consist . . . in adhering to their enemies, giving them aid and comfort."

173. The Constitution specifically states that there can be no deprivation of property without due process of law.  There can be no seizure of property without probable cause supported by oath.

174. In this case, Plaintiff never received due process prior to seizure of his money or property – a seizure that took place without a probable cause supported by oath.

175. For Plaintiff to owe any "tax," Plaintiff must have been federally-connected engaged in a taxable activity, and therefore liable for the **federal-indirect-excise-privileged-income tax**.

176. If Defendants' attorneys believe that there was a due process prior to seizure, that the seized money took place with a probable cause supported by oath, and that the tax levied on Plaintiff is an excise tax or is based on a taxable activity, then they can sign a sworn declaration or request from IRS agent Mr. Haber or the IRS Chief Counsel to submit a sworn declaration, invoking the penalties of perjury against the signer, stating that this was the case.  In the absence of that sworn declaration, in the absence of evidence to prove that there was due process of law, and in the absence of evidence to prove that the "tax" alleged against Plaintiff falls within the lawfully taxed categories, then the Court should have only one choice – to judge in accordance with the standard presented by the Constitution.

177. Since Plaintiff has proven that he is in no contractual relationship with the federal government, enjoying no federal privileges, and is in fact in the private sector, by Defendants' refusal to return to Plaintiff property stolen from him under the guise of "tax" collection and without due process, the DOJ, the IRS, and their attorneys are in violation of their oath of office and are engaged in an insurrection and rebellion against the U.S. Constitution.

## IX.   Conclusion

178. Since Plaintiff is a **"nontaxpayer,"** evidenced by the tax returns for the years in question, Defendants have maintained positions that are contrary to the Constitution and established tax law. They are advocating reasoning contrary to constitutional grounds and U.S. Supreme Court decisions. Their "facts" are based on assumptions, presumptions, and transcripts with fictional amounts – not factual information supported by conclusive, substantive evidence.

179. Defendants' Motion for summary judgment should be dismissed and Plaintiff should be awarded damages he rightfully deserves.


Respectfully submitted,


____/s/ Elias Aoun_____                    Date: November 19, 2008
Elias Aoun, Esq. Bar Number 479315
1730 N. Lynn St., # A-22
Arlington, VA 22209-2004
E-mail: Lawyer2008@yahoo.com
Cell Phone 202-257-7796

## **CERTIFICATE OF SERVICE**

IT IS CERTIFIED that service of the foregoing Plaintiff's Memorandum, along with related attachments and exhibits have been made this 19th day of November, 2008, via the Court's ECF electronic filing system to:

YONATAN GELBLUM
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 227
Washington, DC  20044
Phone/Fax:  (202) 305-3136/514-6866
Email: Yonatan.Gelblum@usdoj.gov


_____/s/ Elias Aoun_____
Elias Aoun